Thank you, Your Honor. May it please the court. My name is Nick Whalen. I'm here on behalf of the appellant, a plaintiff class that was certified by the Louisiana State Court before removal. In this case, the class litigated claims against numerous defendants in state court for about 10 years. Although Homeland was added to the lawsuit back in 2011, and although it already litigated insurance coverage issues in state court, it removed the case in 2019 after the class amended its petition in order to assert a bad faith claim. Homeland removed the case without objecting to the amendment, without filing a motion to sever, or without doing anything else in state court to raise its improper joinder objection. Instead, Homeland removed to the federal court and argued that under state procedural laws, the bad faith claim had been improperly joined in this case. I'll review the facts, and I'll argue two main points. First, the district court erred and denied the class's motion to remand and partially remanded this case to state court based on, we believe, the theory of egregious improper misjoinder. And second, that the district court erred in holding that the class's claim against Homeland is barred by res judicata because a Delaware state court previously dismissed the claim as time barred under Delaware law. First, some background. Homeland owed insurance coverage to another defendant, Corvell Corporation. But Homeland denied coverage, and as a result, Corvell was faced with litigating in a class action proceeding without the benefit of insurance coverage. So Corvell decided to settle, and when it settled, it assigned the class its insurance coverage claim against Homeland. From that point forward, there were two separate litigation tracks. The class litigated insurance coverage issues with Homeland in state court in Louisiana, while Corvell asserted and pursued a bad faith claim in Delaware against Homeland. Initially, all of the claims against Homeland were successful. The Louisiana state court found that there was coverage and ruled in favor of the class and against Homeland. And in Delaware, the trial court held that Homeland had engaged in bad faith insurance practices, and it rendered a judgment in favor of Corvell in the amount of $13.5 million in damages and penalties. But that ruling of the Delaware court was reversed by the Delaware Supreme Court on statute of limitations grounds. The Delaware Supreme Court did not address the merits, and so believing that the claim, the substantive right to sue Homeland still existed, Corvell assigned the claim to the class. The class asserted the claim in this existing class action proceeding in Louisiana state court, and it did so for several reasons. Most notably, Homeland remained a party to the case under Louisiana procedural law because it had not been dismissed as a defendant. Also, Homeland and the class had already litigated insurance coverage issues, and the coverage issues that were litigated are related to the bad faith claim. You can't have a bad faith claim under Louisiana law unless you already have insurance amendment of the petition in Louisiana state court. It did not file an exception of improper joinder, which would have been available to Homeland under Louisiana law. It simply removed the federal court and presented to the federal court its Louisiana procedural law arguments. And that brings us to our first issue on appeal, the district court's improper partial remand of this case to state court. Most fundamentally, setting aside for a minute the concept of there is no statutory authority for the partial removal of a case based on diversity jurisdiction, and no statute authorizes a federal court to partially remand a case. The removal statutes govern the removability of quote civil actions, not specific claims against specific parties. And to remove a case based on diversity jurisdiction, you must have both complete diversity and there must not be a citizen of the state where the action was filed. This court explained in the Gray versus Beverly Enterprises case that the existence of even a single viable claim against an in-state defendant requires that the entire case be remanded to state court. And as far as I know, this court has never condoned the remand of a viable claim against an in-state defendant, and the retention of jurisdiction over claims against diverse defendants. Now that brings me to fraudulent jointer, which is a recognized exception to the complete diversity requirement. This court in Smallwood held that a non-diverse defendant's citizenship may be disregarded, where there is either actual fraud in the pleading of jurisdictional facts, or the plaintiff cannot establish a cause of action against the non-diverse party in state court. Neither of those removal grounds exist here because Homeland did not remove based on fraudulent jointer. Homeland removed based on the theory of egregious improper misjoinder, which is said to apply when you have multiple viable claims in a particular case, but those claims are improperly joined together in a single lawsuit. We think that that is the theory that the district court applied here. The district court treated the class as two separate plaintiffs, the class in its own right pursuing a claim against local defendant MEDCOM, and the class in its capacity as Corvell's assignee pursuing a bad faith claim against Homeland. And it held that those claims had been improperly joined together, and it found that it was appropriate to sever those claims, sever the MEDCOM claim, the local defendant claim, and send it back to state court. Now the egregious improper misjoinder theory was first used by the 11th Circuit in Tapscott over 20 years ago, but it hasn't yet been adopted by any circuit court. In Tapscott, the court was faced with two completely distinct class action proceedings. You had one group of plaintiffs suing a group of diverse defendants, and you had a separate group of plaintiffs suing a group of non-diverse defendants, and the 11th Circuit held that those two separate class action proceedings should not have been joined together. How do you, Mr. Whalen, how do you respond to the citation of Wright and Miller that says that a plaintiff is liable to severance when it sues in two capacities? I'm sorry, Your Honor? I thought there was a citation to Wright and Miller where it said that a plaintiff suing in two capacities invites severance. Well, I don't disagree that in this instance when you have an assigned claim that it's appropriate to look at both capacities when you're evaluating a joinder. Okay. But, are you saying the two capacities are treated as if they're two different plaintiffs? Yes, Your Honor. I think it's appropriate, well, it's appropriate to look at the plaintiff class in both capacities because it has brought an assigned claim. I do think that that's accurate. And that being the case, the case was removed to federal court. The improperly revived claim of the class versus MedCom was treated as misjoined with the assignment claim because they are entirely different claims. One is a bad faith insurance coverage case, and the other is whatever your original claim was. So, the judge said, those are not properly before me. I get rid of those. Yes, Your Honor. And I guess we disagree with the district court on two grounds. First, we don't think there's a... Let me back up. We agree with the sentiment of Tapscott that when you have misjoined claims, an improper misjoinder should not defeat a defendant's right to removal. However, we don't agree with that case procedurally. Specifically, a federal court, in our view, should not be evaluating whether or not joinder was appropriate in state court when a case is filed under state procedural law. I didn't interpret him as ruling that way. I thought he was making a Rule 21 argument, but I think that's the right one. My other question is, why is it not plausible to consider this case appropriate for remand under CAFA where... I'm sorry, appropriate for removal where to the extent that the plaintiffs are here. This is an entirely different claim and it should be evaluated differently. Well, we think there are two reasons. Well, first, this court does have discretion to affirm on the alternative ground of CAFA. The district court did not find jurisdiction under CAFA and the district court seemed uncomfortable with the idea that this type of claim can be asserted technically by a class. It's an assigned claim that, but for the assignment, would be a first party insurance claim between an insured and an insurer. I don't believe that Homeland has yet addressed that specific issue that seemed to be a concern of the district court. Also, even in a CAFA case, I don't believe that a partial remand of inaction is proper under the civil action and only a civil action can be removed. And here, the district court has already remanded the class's claim against local defendant MedCom. So it would be, we don't think that that order of remand of MedCom is reviewable on appeal or otherwise under federal law. And we don't think that the district court's error in partially remanding the case can be fixed now on appeal as a result. So for those reasons, we don't think that CAFA jurisdiction should be exercised. How does it make sense if you're going to treat them as if they're two separate plaintiffs, because of the two separate capacities and then turn around and say, but you're a class for CAFA. And it kind of seems like you're, you know, having your cake and eating it too in that context. I agree, Your Honor. That's why I don't think that there should be CAFA jurisdiction exercised. I think if you're going to treat the class as two separate plaintiffs, you have to recognize that with respect to class action, Fairness Act jurisdiction, that the class is treated as Corvell. That's what the district court said it was doing here. And that's why I don't believe CAFA jurisdiction is appropriate. As to Rule 21, we don't think Rule 21 should be used in the manner that Homeland says it should be used in this case. Rule 21 shouldn't be used to sever a viable claim against an in-state defendant and retain jurisdiction over claims against diverse defendants. In our view, that puts the court before the horse because procedural rules need to be used to manufacture diversity jurisdiction where it otherwise doesn't exist. That's why we have a Rule 82. Rule 82. Now, wait a minute. I mean, isn't it fair to say that you manufactured state court jurisdiction by reviving this claim against MedComp where you hadn't gone after MedComp during the last decade of litigation? And MedComp is out of business. MedComp is dissolved, which we shouldn't close our proof. Well, Your Honor, I don't believe that the plaintiff class manufactured a claim against MedComp. I believe that MedComp, when this case was initially filed, was the comp denominator amongst all of the defendants. And that claim has not been pursued to conclusion, but it still exists. It hasn't been dismissed. It is a viable claim. What are you going to get judgment for against MedComp, a dissolved company? What would the judgment look like? Your Honor, there may be insurance coverage. I personally am not sure about that, but I know it's an existing claim. There are claims and then there are frivolous claims. And as far as insurance coverage goes, I suspect that an insurer would say that the case has been pending without doing anything for a long time. I don't know when their duty to cover lapses, but if the corporation has been dissolved, it probably hasn't been paying premiums either. I'm not sure about that, Your Honor. I don't know if MedComp has been paying premiums. I guess my response would be- This case would not be in federal court if, I'm sorry, right, if you had gone back to Louisiana State Court in the capacity of an S&E and had simply taken up that role, you would have been liable to removal under CAFA. If you hadn't purported to revive the claim, are there any other defendants back there that you didn't pursue? No, Your Honor. The only two defendants at this point are MedComp and Homeland. But under Louisiana law, MedComp is still a proper defendant despite being dissolved, right? It doesn't end the case. Yes, Your Honor. That's my understanding. Okay. That's correct. MedComp remains in the case. And, you know, we do believe it was appropriate to assert the bad faith claim in this particular action under Louisiana law. The district court's ruling otherwise and its focus on the relatedness of these two claims today, as we sit here today, in our view, ignores the history and the evolution of this case. If we conclude that we have jurisdiction, you've got 49 seconds to tell us why you should wait on the merits. Okay. Yes, Your Honor. So I'll do this very briefly. Under Delaware law, which we think applies to this particular judgment, the Delaware statute of limitations judgment dismissing the claim against Homeland as time-barred is only procedural. It does not defeat the substantive right of the plaintiff to reassert its claim in another jurisdiction with a longer statute of limitations. And that's all that the class, as Corvall's assignee, has done here. We believe it was appropriate for the class to bring this claim in this proceeding, and we'd request that either this court find that there is no federal court jurisdiction or reverse the district court's order of dismissal of the Homeland claim. You have five minutes for rebuttal, but I'd ask you to ponder two things. Number one, did you waive application of Delaware law by not really pressing that in the district court? And number two, we've got another case on the docket this morning, which poses a real interesting issue of, what do you call it, double jeopardy. And the law under double jeopardy seems to suggest when the statutes of limitations has run against the defendant, that's a decision on the merits. And just as a matter of theory, why in the criminal context, it would double jeopardy be a decision on the merits, but not in the civil context. But maybe that's just rhetorical. Anyway, we'll move to Ms. Stetson. Thank you, Your Honor. May it please the court. My name is Kate Stetson. I represent Homeland Insurance Company in this appeal. I want to start by reviewing a few of the facts that I think are the questions that you asked Judge Jones in particular. The class that we are talking about here is a class of health care providers who gave services to patients under workers' compensation and whose bills were discounted. That class was defined as workers' health care providers from 2001 to 2006. Now, Judge Jones, you pointed out that about eight or nine years after the in a different capacity as an assignee, bringing a claim for bad faith denial of coverage against a different insured corpel, not MedCom, arising from events that allegedly took place in 2010 and 2011. So the new claim and what gave rise to removal is a claim by a plaintiff class in a different capacity for bad faith denial of coverage relating to a different entity no longer in the case under a different Louisiana statute, which rose from events long after the class period closed. So all of your questions relating to the contrivance that we think gave rise to this removal and to the district court's decision, I think were very well taken. This was a circumstance where the plaintiff class, after Corvell lost in the Delaware Supreme Court, contrived to attach this bad faith claim to what was essentially a moribund claim against a defunct corporation that hadn't been pursued in eight or nine years at the time they filed this particular amendment to their lawsuit. And of course, that gives rise to a joinder issue on removal. Now, I want to start with Mr. Whalen's kind of initial premise, which is that only a civil action can be removed. We completely agree with that. But that doesn't answer the question that the Supreme Court has answered for 100 years, starting if not before Wilson in Wilson in 1921, that this court has answered repeatedly and the district courts all over the country have answered, which is if a defendant or a plaintiff is fraudulently joined, then the question arises at the removal stage about what to do with that particular party. So we have we have no quarrel with the idea that civil action must be removed. It was removed. And that makes this case different from, for example, Arango or Dillon, which are the cases that Mr. Whalen cites in his brief. The question then is what happens after removal. And as this court has pointed out, as many district courts in this circuit have pointed out, there are really a couple different joinder paths here that might be relevant. One of them is what this court now calls improper joinder. And the second is what's called fraudulent misjoinder. Improper joinder boils down to the circumstance where, aside from a truly fraudulent pleading, the circumstance where a plaintiff has brought a claim against a jurisdiction spoiling defendant, but that claim doesn't exist in state court. There is no reasonable possibility that the plaintiff could recover against that non-diverse defendant in state court. That's improper misjoinder is, as the 11th Circuit described in Tapscott, as this court referred to in the In re Benjamin Morin and Damas cases, when a party essentially glues two completely different lawsuits to each other. That's a misjoinder. Now, I think you can think about this case actually in either of two ways. And I think the magistrate judge for his part, you know, did somewhat the same. If you, Judge Haynes, you asked the question about the plaintiffs acting here in two different capacities. If you, and Mr. Whelan agreed with you, that this plaintiff class is in its capacity as an assignee and its capacity as a class. And under both Louisiana law and Judge Jones, as you pointed out, Wright and Miller, when you have plaintiffs who are acting in both of those different capacities, those plaintiffs are subject to severance if what they've brought is not appropriate to be brought together. So if you look at it that way, and you concentrate on the plaintiff and their different capacities, then you ask the question, does the plaintiff class in its capacity as an assignee have any claim against MedComp? And the answer, of course, is no, it doesn't. There is no claim running from the plaintiff as assignee to MedComp for all of the reasons that I mentioned earlier. There is no allegation ever in this case of any kind of joint liability between MedComp and Homeland. Homeland is not MedComp's insurer. They have nothing to do with each other, either temporally, factually, or legally. So in light of that... Okay, so for what it's worth, I don't agree with Mr. Whelan that you can split up one party into two because they're in different capacities. I don't think that Ryden Miller is dealing with that issue in the context of diversity jurisdiction removal, and perhaps you can tell me, is there a case in our court that has done that? Treated the two capacities as if it's... Let's just say it was one person. I know you got this class, but if I was suing as a trustee, and I was also suing as me, that I'm somehow going to be two trustees. The wrong thing. An assignee. So somebody, Judge Ho assigned me a cause of action, and then I also had my own cause of action, and I sued you and Mr. Whelan. How am I suddenly two different people? Your Honor, I can't point to a case from the Fifth Circuit, but I can point to the Waggoner case out of Louisiana that we cite in our briefs that talks about exactly that proposition. A plaintiff brought a particular claim in their individual capacity. I think it was two plaintiffs. They then were assigned a claim by another entity and essentially brought the same claim. And the defendant raised a race judicata argument, arguing that these people standing in front of them were the same people. And the Louisiana court said, no, they're here in different capacities. How can Louisiana State Court decide diversity jurisdiction for us? My question is whether you can split the same person into two different people for diversity jurisdiction purposes. And I don't see a case that says you can or should, and that isn't what Ryden Miller is talking about when he says the misjoinder issue. What Ryden Miller is talking about, and this is Federal Practice and Procedure 1585, is exactly the severance principle. When you have plaintiffs in two capacities and they have essentially cobbled together two claims that are completely different. And that's the key. If we were talking about a plaintiff acting in her own capacity with two different claims that arose from the same set of facts and circumstances against the same defendant, we wouldn't have this problem. The reason we have this problem is because of what Ryden Miller describes. You've got two separate cases, plaintiff as assinee going after a claim and you have plaintiff going after an original defendant for a tort or let's say breach of contract or whatever. So it's not simply the two capacities. It's the fact that the claims are totally unrelated. Isn't that what you mean? That is exactly right. And that's the circumstance that I think Ryden Miller is talking about. When you have those two capacities and the claims are so distinctly different. It's not talking about removal of diversity jurisdiction. It's just about a regular case in federal court. So I don't see that it answers this specific question. I take your point. Maybe it would answer it that way. I'm just saying I don't see that it does. Yeah. I see what you're driving at. And I think the answer is Ryden Miller doesn't speak to diversity jurisdiction in this circumstance. But I think what it's useful for is to talk about the principle as White and Ryden Miller does that a plaintiff in two different capacities can be severed one from the other. If the claims are so distinct as to be two different cases, as Judge Jones put it, then you go back to those fraudulent joinder and misjoinder principles. Because what we're talking about here, of course, is, is there a jurisdiction destroying defendant in this case who shouldn't be here? And the answer is yes. MedCom is a defunct corporation. It is jurisdiction destroying. This is absolutely why the plaintiff class chose to. You agree with Mr. Whelan that the fact that they're defunct does not mean that the case is over. I mean, if we were just dealing with the case against MedCom, forget all the diversity, we're sitting as a Louisiana state court, the case would still proceed against MedCom, even if they're defunct, right? The case, I don't think we've ever argued that the case would be over, Judge Haynes. I think the reason that it's relevant is, you know, among other things, for the reasons that Judge Jones pointed out and we pointed out in our briefs, the fact that MedCom did not proceed, or the fact that the plaintiffs did not proceed against MedCom for years following the settlement against Corvell and other entities, the fact that MedCom is defunct, the fact that MedCom has been declared terminated in Louisiana, which means it's no longer an operating concern under Louisiana law, all of that gives rise to the question, among other things, under CAFA about whether there is any significant relief that could lie against this defunct corporation against whom the plaintiffs had no interest in pursuing what they now say is a huge claim. I don't think that feelings and strategy and all that are really part of diversity jurisdiction. Federal courts are courts of limited jurisdiction, so we shouldn't be just, well, we feel like this is a bunch of goo, so let's just forget about it. I mean, to me, the fact that the court felt the need to remand MedCom means MedCom still exists, there's still a case. So I don't understand this, like, feeling about, boy, you know, you haven't done a very good job against MedCom. Right. I hear you and I understand. Judge Jones, were you going to ask a question? I'm just querying, I mean, I am sort of querying why Homeland didn't bring this up in the state court originally before removal. Maybe you thought the time limit was going to expire, I don't know, but my view is that MedCom, if there is a MedCom, if it has a lawyer or if it has a lawyer, it's liable to obtain dismissal for one of prosecution because no court lets something sit without activity against a defendant for nine years. And then if it does have a lawyer, then it would argue that it's a, you know, it's a it's a frivolous case because they can't obtain a judgment. So. Right. And I think that's all correct. And I think Judge Haynes, you know, we're not arguing kind of the extremes of what you're positing here. We're not arguing that somebody should just take a look at this and make a gut call about whether or not there's jurisdiction. We're not arguing that because MedCom is defunct, that it's no longer in the case and the problem is solved. You know, it is more complicated than that, as we pointed out. But the point that we are making here is the point that has been adopted over and over and over again by probably two dozen different decisions in this circuit alone, that when you have two cases that don't belong stuck to each other, a federal court can do something about that. Now, to your point, Judge Jones, it certainly is available in certain circumstances for a defendant in the state court to try to sever at that point before bringing the case up to the Court of Appeals. Crockett mentioned that this was a path. It has never been defined as the path, though. And I think the reason is for the second thing that you said, that, you know, under 1446, there is a time limit that is non-negotiable that applies to removals when diversity jurisdiction is the ground for removal. It's an accommodating time limit, but I think a defendant, particularly defendant in a court that has let a case sit for eight or nine years against another defendant, a defendant is well within its rights under misjoinder and joinder jurisprudence to bring that case up to the court, to the federal court, just as it has been permitted to do for decades, if not a couple centuries at this point, and to ask the federal court to take a look at the joinder question. I had the same question that Judge Jones had. I want to make sure I heard your answer. Why not just do the joinder in state court and avoid the Tapscott controversy, if you will, or the whole jurisdictional issue? Is your point that you would not have been able to remove in time? Is that the idea? That is the idea, yes. And the second related idea is that there is no prohibition on raising this joinder issue in federal court. That's a separate question. This is just a curiosity. If you do it in state court and succeed, then we don't have this discussion. If you do it in state court and succeed, that's right. If you do it in state court and it takes too long, then the defendant has a problem. It's a 30-day clock, right? It's a 30-day clock. It can be extended in some circumstances, depending on the nature of the filing that gives rise to the removal. But as you can imagine, a defendant confronting both a 30-day clock and a non-negotiable one-year clock, who is sitting in a Louisiana state court that, as I mentioned, did nothing with MedCom for eight or nine years, has every right and has the prerogative to take this issue up to the federal court and ask— So even if you had moved on day two, you were worried that you were not going to get a ruling by day 31 or by day 30? You know, echoing Judge Hange's point, I don't want to speak to kind of what the beliefs were, but I do think that that is a worry that defendants would have, that we wouldn't get a ruling from the state court in time. And the state court process isn't kind of preclusive of the federal process. And this, I think, is where the Tapscott concept really comes to the fore. And if you want to compare the two types of kind of fraudulent joinder that we're talking about here, you know, one of them asks the question, is there any reasonable possibility of recovery against the defendant? That's what this court calls improper joinder, as I mentioned. The misjoinder question essentially asks, is there any reasonable basis for concluding that these two defendants should be stuck together in this case? Excuse me. I thought this court had referred favorably to Tapscott. It has indeed. It has indeed. And so the point that I'm trying to make is there's been a lot of hand-waving around Tapscott's discussion of what's called egregious misjoinder. And a lot of courts, a few district courts in Illinois, a couple district courts in California, have kind of thrown up their hands and said, well, we don't know what egregious means, so we're not going to apply Tapscott. What I'm suggesting is that, and this goes to Judge Hange's point about being uncomfortable with expanding diversity jurisdiction, what I'm suggesting is that you look at the same thing and you ask the same rigorous question that you do in the improper joinder context. Okay, let's talk about that because we have taken several en bancs on this topic, most recently being flagged versus striker, which y'all didn't cite, but which goes through what are the bases to do that when you don't have on the face of it diversity and you have to do something different. We're talking about the actual fraud, nobody's claiming that. So then you have the joinder issue and it does not at all adopt Tapscott. It says you don't have a cause of action against the in-state defendant and y'all are not and cannot contend they don't have a cause of action. You may say it's not much of one, it ain't going to be all that successful and all that kind of stuff, but you can't really say they don't have a cause of action. We can say that, Judge Haynes, as to the plaintiff as the class assignee, we can absolutely say that. That's where you're splitting the two. Yes, indeed. I respectfully don't agree with the splitting. I don't know why Mr. Whelan does, but jurisdictional questions can't be weighed. So it doesn't really matter what the lawyers say if they're wrong. But you're saying if we split them in two, then that's where the question is, that as the assignee, they could ensue MedCom. There are two different paths to the same answer, Judge Haynes. If you accept the idea that this plaintiff class is operating in two different capacities, is essentially two different plaintiffs, then the improper joinder path is the path that you can travel because the assignee class has no claim against MedCom. And this is what the magistrate judge said below. And why wouldn't we say that though, then in our own, because we take cases on bonk, obviously to address the case in question, but also to address that general area. And we have not said that. I mean, I was in the dissent and flag, but I'm bound by flag, but it certainly doesn't say what you're saying. I believe, Judge Haynes, that this court has repeatedly adopted the basic principle of fraudulent joinder. I think where the action is on this question that Mr. Whelan posits, has this court adopted fraudulent misjoinder, the attaching together of two claims? Now, as this court pointed out a couple of different times in Benjamin Moore, that is a concept that gives rise to a joinder problem. As any circuit, I would like to ask you one yes or no question and then ask you to move on to the res judicata issue. Yes or no, has any circuit court disavowed Tapscott? No. Okay. Moving to the judicata. I apologize. Can I just ask one quick question? What's your best statutory support for Tapscott being correct? I think the statutory support is 1441 and 1446, Judge Hope. It follows from the long line of Supreme Court and Fifth Circuit cases, including Crockett, that talk about when a case is improperly joined together, that it can be disjoined and sent back to the state courts for purposes of diversity jurisdiction. Quickly on race judicata, I think the problem with Mr. Whelan's argument is that they are not appreciating the full faith and credit clause. This court in Thompson last year explained that all federal courts must give, and I'm quoting, preclusive effect to state court judgments whenever the court of the state from which the judgments emerged would so. Delaware courts have said repeatedly that a judgment on statute of limitations grounds is a judgment on the merits. That is the end of the inquiry for the federal district court asked to review that question now. I'm sorry. Everything is frozen on my screen except myself. Now it's down to zero. I thought that Mr. Whelan had cited a Delaware court case from 20 or 30 years ago that held to the contrary. Mr. Whelan cited a Delaware court case from 40 years ago that has never once been cited except for one time, actually has never once been cited. The prior case that it cited in turn has been cited once in 1962. The cases we're talking about on the other hand are from 1998, the Loving case, 1995, the Townsend case, and of course the Second Circuit's decision in Ambase, which goes through the Delaware statute of limitations principles quite thoroughly. And Mr. Whelan's response to Ambase is that Ambase is different because that involved a different statute of limitations questions. It is absolutely the same as what the federal district court confronted here. It is a federal district court being asked to apply Delaware law. Delaware statute of limitations are race judicata because they are- Can I ask a quick full faith and credit question on that? Because, so the argument here is that this was removed from the Louisiana state court. The Louisiana state court would not have had to apply Delaware law under, I mean, under Delaware law would not have had to apply the statute of limitations, would not have been precluded. So then why is the federal court precluded? If we assume arguendo that that's true, then why is the federal court precluded? I, with respect, I can't assume arguendo that that's true because that's not true. If this case had remained in Louisiana state court, the Louisiana state court, under the full faith and credit clause, just as a federal court would have to do. So you're disagreeing with that premise. It's not a matter of the federal versus state. It's a matter of you think Louisiana would have had to apply, would have had to give race judicata effect. So that's back to the debate about whether this is procedural or substantive. That's right. And Delaware courts make very clear that this is substantive for purposes of finality and merits rulings. If there are no further questions. No, ma'am. Mr. Whalen, rebuttal. You're muted. Mr. Whalen. Okay, there I am. First, even if the class has two separate capacities at this point in time, we don't think that this case fits within the improper joinder jurisprudence of this circuit. And we don't think that Tapscott should be followed. We think that the better roadmap, as we've pointed out in our brief, is the Crockett case. In Crockett, a diverse defendant tried to remove one time and failed after making an improper joinder argument. And that defendant went back to state court and it filed the motion to sever in state court. And then it removed again because obtained a severance. Is that what you're advising Homeland to do here? Yes, your honor. We think that that's appropriate. And we don't think that there is a timing argument because why are you wasting everybody's time and money on this? I mean, it's very unfortunate if we end up right back in federal court. Well, maybe it's their fault. Maybe I'm assessing blame incorrectly. But what I'll say, your honors, I don't believe that it was improper of the class to assert the bad faith claim in this lawsuit because of how this case evolved over the past decade in Louisiana state court. Sitting in a vacuum today, one may be able to say that the claims are not related. However, the way the case evolved, the med comp was initially joined as a defendant. It was the I mean, a smart plaintiff's lawyer probably wouldn't have pursued them if he didn't think they could. You could get any money against them. That's I don't that's neither here nor there. But the fact is you did nothing for nine years. But and you know, anyway, you know, but over the next 10 years in state court, as Homeland said in the record at page 1336, the central issue in the case before the Louisiana state court became the insurance issue, whether or not Homeland owed insurance coverage. The bad faith claim is directly related to that coverage issue. And Homeland never complained before the bad faith claim was asserted that the insurance coverage claim should not have been litigated in the same case as the med comp claim. We think it was appropriate to file the related bad faith claim in this case. Addressing real quick the full faith and credit act and the dismissal of the case on res judicata grounds. The full faith and credit act does not require that a federal court sitting in Louisiana act as though the plaintiff refiled its case in Delaware. It requires that the federal court sitting in Louisiana look at the nature and scope of that of the Delaware judgment and determine whether it's entitled to preclusive effect. That's the in our view, the the flaw in and base, which the district court citing in Homeland's argument on appeal and in the district court's reasons, all of them act as though this case is a successive lawsuit filed in the state of Delaware. We agree that if the case had been refiled in Delaware, res judicata would bar that case. A litigant would be precluded from raising the same issue twice in Delaware, but that has nothing to do with whether or not a litigant can raise the claim in Louisiana, a state with a longer statute of limitations. If you look at the Louisiana, I'm sorry, the U.S. Supreme Court's decision in the Semtec case, Justice Scalia talked about the fact that that the traditional view of statutes of limitation judgments is that they are procedural, that they do not preclude litigants from refiling claims in states with longer statutes of limitations. And so we think that the district court erred in concluding here that it was required by the Full Faith and Credit Act to just to dismiss the class's claim against Homeland. And but you didn't make that argument in the in the district court, did you? Your Honor, I believe the briefing in the district court was sufficient to raise that issue. I think that the rule that Homeland cites is there to make sure that the district court has the opportunity to rule on an issue. And this is the specific issue the district court ruled on. We did cite additional authorities, but I think we're permitted to do that. I don't think that the forfeiture rule applies here. Well, well, well, we can decide that for ourselves also, of course. Well, it's a very interesting case and good argument. So we thank you both very much. Thank you, Your Honor. Thank you, Your Honor.